Filed 9/18/13  P. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E057425 |
| v. | (Super.Ct.No. RIF150222) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| NIGEL IAN RODRIGUEZ, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Patrick F. Magers, Judge.  (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Petition granted.

Paul E. Zellerbach, District Attorney, and Natalie M. Pitre, Deputy District Attorney, for Petitioner.

No appearance for respondent.

1

Brian Boles, Interim Public Defender, Kim Bhatia and William A. Meronek, Deputy Public Defenders, for Real Party in Interest.

Defendant and real party in interest Nigel Ian Rodriguez (defendant) pleaded guilty on May 22, 2009, to possession of a controlled substance for sale (Health & Saf. Code, § 11378) and a misdemeanor charge of child endangerment. (Pen. Code, § 273a.) He was placed on probation and ordered to serve 180 days in jail and make payments on certain assessed fees. From the record it appears that he complied with all terms.[1]

However, on September 19, 2012, defendant filed a "motion to vacate judgment/petition for writ of error *coram nobis*" attacking his conviction. In this motion/petition he alleged that his plea had been "conditional upon drug test results indicating (1) that the substance tested is a controlled substance, and (2) that the substance is not mere residue." (This "condition" is not reflected in the docket entries.) The motion/petition was supported only by a brief affidavit by counsel, in which she recited the purported "condition" and stated that "[a]fter the rendition of judgment, I received a copy of a laboratory report indicating that (1) the substance tested is not a

---

[1] The only information about the case in the record comes from the police report and/or return to the service of a search warrant. The warrant apparently authorized the search of defendant, his vehicle, and a listed address. When the police arrived, one officer saw defendant run from the kitchen area towards the rear of the house, and the door was then forced. The two plastic baggies eventually sent for testing were found in a tan pouch inside the bathroom vanity, under the sink. Among the other items found were a digital scale, also inside the pouch; two baggies of marijuana; a glass smoking pipe with white crystalline residue; and over $2,000 in cash. Interviewed by police, defendant reportedly *admitted* using and selling methamphetamine. The house reportedly belonged to defendant's sister, who was allowing him to stay there. He had not been employed for several months and was paying her minimal rent of $50 per month.

controlled substance, or [*sic*] (2) the substance is mere residue." She also declared that neither she nor defendant was aware of the results of the tests prior to the plea, and that the facts could not have been discovered "at any time substantially earlier than the time of this motion . . . ." No further details were provided. Although the declaration itself is silent on the point, the motion (verified by counsel) asserted that counsel received the lab report on July 28, 2011.

The test results to which defendant evidently referred are dated April 29, 2009—almost a month prior to the entry of the plea. This laboratory report reflects that the technician received two clear plastic bindles containing a "white crystalline substance," one weighing 3.6 grams and the other 2.1 grams. The first of the two items was analyzed and found to contain *no controlled substances*, but did contain dimethylsulfone, said by the People to be a "cutting agent."[2] *The second item was not analyzed*.

The People opposed the motion/petition on the legal basis that relief in *coram nobis* was not authorized (see *infra* for details) and also pointed out that on the change of plea form, defendant had expressly admitted to a factual basis for the plea and that the form also reflected that the only "condition" for the plea was the specified disposition. Nevertheless, the trial court granted the motion/petition, vacated the conviction, and set further proceedings. This petition from the People followed.

---

[2] The Department of Justice agrees: < http://www.justice.gov/archive/ndic/pubs1/1837/index.htm> (as of May 24, 2013).

3

DISCUSSION

The standard of review of an order on a petition for writ of error *coram nobis* is abuse of discretion. (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 544 [Fourth Dist., Div. Two].)

With the development of the modern statutory postjudgment remedies—appeal and the motion for new trial—the role of the ancient writ of *coram nobis* has been sharply limited. (*People v. Reid* (1924) 195 Cal. 249, 257-258.) As it is currently recognized and employed, *coram nobis* offers a defendant the opportunity for relief if three requirements are met: 1) the petitioner must show that some fact existed which, without negligence on his part, was not presented to the court at trial, and which, if presented, would have prevented the judgment; 2) he must also show that the new facts or information do *not* go to the merits of issues tried; and finally 3) he must also show that these facts could not have been discovered at any time substantially earlier than the time of his motion for the writ. (*People v. Shipman* (1965) 62 Cal.2d 226, 230-231 (*Shipman*).) The party seeking relief bears a heavy burden in overcoming the presumption of the regularity of the judgment. (*Mendez v. Superior Court* (2001) 87 Cal.App.4th 791, 799 (*Mendez*), citing *People v. Grgurevich* (1957) 153 Cal.App.2d 806, 810-811.)

*Coram nobis* has been recognized as appropriate where a plea of guilty is obtained by duress or extrinsic fraud. (E.g., *People v. Perez* (1908) 9 Cal.App. 265, 266-267 [defendant claimed that while awaiting trial, the sheriff told him he was at risk of mob

4

violence, which could only be avoided by a plea of guilty]; see also the even more egregious *Sanders v. State* (1882) 85 Ind. 318 [in which counsel urged his client to plead guilty while a lynch mob howled outside].)  But again, in such a case the defendant must make a "strong and convincing showing of the deprivation of rights by extrinsic causes . . . ."  (*People v. O'Neal* (1962) 204 Cal.App.2d 707, 708-709.)

First, the bare claim that defendant's plea was "conditional" was simply not supported by the record, and there is certainly nothing to show that the trial court *at the time* was prepared to allow defendant to withdraw his plea if the lab results were exculpatory.  The trial court should not have accepted this uncorroborated assertion, which stood in clear contradiction to the record.

It will also be immediately apparent that defendant's showing here fell far short of the necessary standard on the critical *Shipman* criteria.  The "new fact" which defendant offered *does* go directly to the merits of the issues tried—he was charged with possessing a controlled substance, and the lab results indicate that the sample tested was not a controlled substance.  Furthermore, there was absolutely no evidence presented as to why the information was not discovered sooner.  As we have noted, the report is dated almost a month before the plea was entered, and nothing in the motion explained why defendant and/or his attorney had not insisted on receiving it before entering the plea.

Worse yet, the motion also acknowledged that the results were received in July of 2011—over a year before the motion/petition was filed.  This clearly fails under the third *Shipman* criterion—he *did* discover the new facts "substantially earlier" than the time he actually filed for relief.

The trial court apparently thought that because the new evidence pointed to (but did not establish) innocence, defendant was entitled to relief. But as we have explained, *coram nobis* is not to be routinely employed to vacate convictions free from duress or fraud. Defendant's failure to meet the criteria established for *coram nobis* relief cannot be excused by the potentially exculpatory nature of the evidence presented.

Defendant argues that extraordinary relief is not necessary because the People can appeal. The order *is* appealable. (See Pen. Code, § 1238, subd. (a)(5) [order after judgment substantially affecting the People's rights]; *People v. Gutierrez* (2003) 106 Cal.App.4th 169.) However, given the extensive delay in this matter, which carries the potential for prejudice to the People if retrial should be necessary—and the desirability of preventing an unnecessary retrial—we think immediate review is warranted.

Defendant then asserts at some length that the plea was induced by "deceit" in that the prosecutor knew the substance tested negative and concealed this information from defendant and his attorney. There is no evidence in the record to support it. It is a fundamental rule of appellate review that statements of alleged facts in the briefs on appeal that are not contained in the record must be disregarded. (*Knapp v. Newport Beach* (1960) 186 Cal.App.2d 669, 679.)

Defendant urges that the People supposedly "admitted" deceit by the comment in the petition to the effect that if defendant had been concerned about the sample results, he "could have demanded the laboratory results from the People . . . ." In our view, defendant reads far too much into this "concession," which does not conclusively establish that the prosecutor in this case had received or had reviewed the report. At the

6

point cited by defendant, the People continue "*or could have obtained the results on his own initiated [sic] from the Department of Justice.*"[3]  (Italics added.)  All that can be definitely stated from the factual record is that defendant was indifferent to the results at the time he entered his plea.  The trial court was presented with no basis whatsoever to conclude that the prosecutor acted inappropriately, and we decline to consider upholding the ruling on any such basis.  We also point out that absent extrinsic fraud or duress, a judgment predicated on perjury or entered because evidence was concealed *cannot* be attacked by a petition for writ of error *coram nobis*.  As relevant to this case, defendant could have protected himself by going to trial and demanding discovery of the lab report. (See *Mendez*, *supra*, 87 Cal.App.4th 791, 799 [in which the defendant pleaded guilty after the arresting officer testified about a drug transaction at the preliminary hearing and later argued that the officer had, years later, turned "rogue" and could have been lying; remedy was to have gone to trial and challenge the officer's credibility, and *coram nobis* was not available].)

Defendant is on slightly better ground in challenging the People's reliance on his lack of diligence in seeking relief.  He correctly points out that this issue was not raised in the opposition below, in which the People argued only that defendant had failed to meet the other two *Shipman* requirements—that there was no new fact and the purported new fact went to the merits.  He supports his claim of waiver with *In re Moser* (1993) 6

---

[3] The report is directed to "Drug Report Recipient" at the Moreno Valley Police Department.  It apparently did not go directly to the district attorney.

7

Cal.4th 342, 350 at footnote 7. In that habeas corpus proceeding, the People attempted to raise an issue of delay in both the Court of Appeal and the Supreme Court. When the Supreme Court granted review, it expressly limited the issues to be considered to those of the trial court's duty to correctly advise defendant about the length of the applicable parole period prior to accepting a guilty plea, and the remedy for any error in that respect. Thus, the Supreme Court, in deeming the timeliness issue to have been waived because it was not raised in the trial court, also relied acerbically on the People's disregard of the limiting language in the grant of review.

As we have explained above, in seeking *coram nobis,* the defendant bears a heavy burden. While it is puzzling that the People below relied only on the first two *Shipman* requirements, the fact is that the motion/petition itself was deficient in its conclusory and unsupported assertion of diligence that the trial court simply could not have found it to have satisfied the legal requirement. (See *People v. Kim* (2009) 45 Cal.4th 1078, 1098-1099 [must allege with specificity "the time and circumstances under which facts were discovered"].)

However, defendant's claim for relief was also defective on the other two grounds, as we have discussed above, with respect to which the People did raise appropriate arguments. Defendant did not show that he failed to present the purported "new fact" to the trial court before entering his plea due to reasons beyond his control.

And we also reiterate defendant's proffered new fact goes directly to the merits of the case—guilt or innocence. Even new evidence that would have bolstered the defense will not lead to relief unless it would have *precluded* the judgment in a legal sense.

(*People v. Kim, supra,* 45 Cal.4th 1078, 1095, citing *People v. Tuthill* (1948) 32 Cal.2d 819, 827.)  Evidence disputing the prosecution's charges is not the kind of "new fact" that would lead a court to decline to enter the judgment.  (See *People v. Kim*, *supra*, 45 Cal.4th at pp. 1091-1094 [discussing the history of the writ and noting examples such as the death of a party before judgment, infancy of a party or the common law disability of a married woman litigant, insanity, or legal servitude].)

Accordingly, defendant failed to establish a right to relief under *any* of the *Shipman* factors, and the court's ruling failed to follow clearly applicable law.  (See *Mendez*, *supra*, 87 Cal.App.4th at p. 803 [declining to create an "abstract 'equitable remedy' " where defendant's claim did not meet the legal standard for relief in *coram nobis*].)  A ruling in clear contradiction of established law also constitutes an abuse of discretion when that is the standard of review.  (*People v. Superior Court (Brim)* (2011) 193 Cal.App.4th 989, 991; *People v. Ibanez*, *supra*, 76 Cal.App.4th at p. 549.)  Accordingly, we will grant the People's petition.

DISPOSITION

The petition for writ of mandate is granted.  Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate its order denying summary adjudication of count one of real party in interest's complaint, and to enter a new order granting summary adjudication as to that count.  In all other respects, the petition is denied.

Petitioners are directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

The stay previously ordered by this court is lifted.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.